IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EHONAM M. AGBATI,
          Plaintiff,

v.                                                                               Civil Action No. 3:19-cv-512

VIRGINIA DEPARTMENT OF AGRICULTURE
AND CONSUMER SERVICES,
          Defendant.

## **OPINION**

Ehonam "Roger" M. Agbati has sued his former employer, the Virginia Department of Agriculture and Consumer Services ("VDACS"), alleging discrimination based on race, color, and national origin. Agbati asserts claims under Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act ("VHRA"). VDACS has moved to dismiss Agbati's complaint for failure to state a claim. For the reasons set forth below, the Court will grant in part and deny in part the motion to dismiss. The Court will deny the motion as to Agbati's failure to promote claim under Title VII, but will grant the motion as to Agbati's remaining claims. The Court, however, will grant Agbati leave to file an amended complaint as to his retaliation and pay discrimination claims under Title VII.

## **I. FACTS ALLEGED IN THE COMPLAINT**

Agbati, an African American immigrant from Togo, began working at VDACS as a part-time hourly employee in July, 2013. Before working at VDACS, Agbati earned a bachelor's degree from Virginia Commonwealth University in political science, government, and politics, with a minor in nonprofit management and administration. In November, 2013, Agbati became a full-time employee at VDACS. Michelle Townsend served as Agbati's supervisor.

During Townsend's supervision, "there was harmony" among Agbati's team. (Dk. No. 3, at 9.) But the workplace "started going 'south'" when Alison Foster replaced Townsend as Agbati's supervisor. (*Id.*) VDACS hired Kathryn Land to fill Foster's role after Foster received a promotion. Around that time, VDACS also hired Alyssa Royer. During Royer's first week, Agbati noticed her "anti-social and discriminatory behavior." (*Id.* at 9-10.) Royer greeted Agbati with a "sarcastic smile" when they walked past one another in the hallway, and he noticed similar treatment toward other African American employees. (*Id.* at 10.)

When Agbati complained to Foster about the discriminatory behavior, Foster told him that others reported similar treatment. Foster also said that she would try to talk to Royer about the behavior. Royer then began closing her office door to avoid contact with "people she [did not] want to talk to." (*Id.*) Foster resigned in the fall of 2016. Around the same time as Foster's resignation, VDACS promoted Agbati's African American coworker, Joseph Cason.

Agbati alleges that Royer did not like how closely Agbati and Cason worked together. Agbati says that Royer created "a coalition of people who look like her" with whom she took walks, ate lunch, and took breaks. (*Id.*) Land (Foster's replacement) assumed "the role of the coalition's bully." (*Id.* at 11.) When Land heard Agbati answering calls, she slammed her door closed. Cason resigned after white female employees began complaining about him.

When a supervisory position became available in November, 2017, Agbati applied for the promotion. VDACS instead promoted Royer, a white woman. Agbati alleges that he had "the most seniority" and was "the most qualified person" for the promotion. (*Id.*) Agbati also says that VDACS promoted Royer because she had a "close relationship" with management. (*Id.* at 12.)

In April, 2018, Agbati filed a grievance with human resources, alleging that Royer created a hostile work environment. (*See* Dk. No. 3-9.) Agbati advanced his grievance through three

2

levels of internal review pursuant to the VDACS grievance procedure. After each reviewer concluded that his claim lacked merit, the Director of the Office of Equal Employment and Dispute Resolution denied Agbati's request to have his grievance reviewed at a hearing. Agbati alleges that he was "completely outcast[ed]" after he filed the grievance. (Dk. No. 3, at 8.)

Agbati later made several requests under the Virginia Freedom of Information Act ("Virginia FOIA") to determine his coworkers' compensation. Because VDACS determined that the cost to retrieve the records would exceed $200, VDACS charged Agbati a deposit pursuant to Va. Code § 2.2-3704(H).[1] (*See* Dk. No. 3-7, at 164.) Agbati refused to pay the deposit. Agbati later retrieved some salary information from public reports available online.

Agbati resigned from VDACS effective April 18, 2019. In his resignation letter, he cited the "employment/promotion discrimination perpetrated again [him] and the hostilities" resulting from his "actions to fight the injustices committed against [him]." (Dk. No. 3-6, at 5.)

After exhausting his administrative remedies, Agbati filed this case. Agbati's complaint raises the following claims[2]: a failure to promote claim under Title VII (Count One); a hostile work environment claim under Title VII (Count Two); a constructive discharge claim under Title VII (Count Three); a retaliation claim under Title VII (Count Four); a pay discrimination claim under Title VII (Count Five); and a claim under the VHRA (Count Six).

---

[1] "[W]here a public body determines in advance that charges for producing the requested records are likely to exceed $200, the public body may . . . require the requester to agree to payment of a deposit not to exceed the amount of the advance determination." Va. Code § 2.2-3704(H).

[2] Liberally construed, the three "claims" in Agbati's complaint raise allegations of failure to promote, hostile work environment, constructive discharge, retaliation, and pay discrimination under Title VII. Thus, the Court enumerates his Title VII allegations as five separate counts.

## II. LEGAL STANDARD

VDACS has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When the plaintiff appears pro se, as Agbati does here, courts do not expect the pro se plaintiff to frame legal issues with the clarity and precision expected from lawyers. Accordingly, courts construe pro se complaints liberally. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). This principle of liberal construction has its limits. *Id.* Courts do not need to discern the unexpressed intent of the plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

## III. DISCUSSION

### A. *Title VII Claims*

#### 1. *Count One: Failure to Promote*

In Count One, Agbati asserts that VDACS failed to promote him based on his race or nationality. To state a claim for discrimination claim based on a defendant's failure to promote, a plaintiff must plead facts showing that "(1) [he] is a member of a protected group, (2) there was a specific position for which [he] applied, (3) [he] was qualified for the position, and (4) [his employer] rejected his application under circumstances that give rise to an inference of discrimination." *McCaskey v. Henry*, 461 F. App'x 268, 270 (4th Cir. 2012) (per curiam). VDACS argues that Agbati fails to plead facts giving rise to an inference of discrimination.

Agbati, an African American immigrant from Togo, alleges that VDACS promoted Royer, a white woman, for the supervisory position over him. He says that he had "the most seniority" and was "the most qualified person" for the promotion. (Dk. No. 3, at 11.) Thus, Agbati alleges "that a member outside the protected class received a promotion instead of [him]," which "is sufficient to create an inference of discrimination." *McCaskey v. Henry*, 461 F. App'x 268, 270 (4th Cir. 2012) (per curiam). Because Agbati pleads sufficient facts to state a failure to promote claim, the Court will deny the motion to dismiss Count One.[3]

#### 2. *Count Two: Hostile Work Environment*

In Count Two, Agbati alleges that VDACS maintained a hostile work environment in violation of Title VII. To state a hostile work environment claim, plaintiff must plead facts

---

[3] VDACS argues that it did not promote Agbati simply because he lacked the necessary supervisory experience. For support, VDACS cites its promotion criteria and Agbati's application, both of which Agbati attached to his complaint. (*See* Dk. No. 3-8, at 119-132.) Although Agbati pleads facts sufficient for his failure to promote claim to survive a motion to dismiss, VDACS may raise those arguments again on summary judgment.

showing that "(1) he experienced unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207-08 (4th Cir. 2019). VDACS argues that Agbati fails to allege facts to meet the "severe or pervasive" standard.

Agbati's complaint "must clear a high bar" to meet the severe or pervasive standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Title VII prohibits "extreme" conduct that "must . . . amount to a change in the terms and conditions of employment." *Faragher v. Boca Raton*, 524 U.S. 775, 778 (1998). It does not create "a 'general civility code,'" nor does it impose liability for "the ordinary tribulations of the workplace." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). To determine if conduct qualifies as severe or pervasive, courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

Here, Agbati alleges that his supervisor treated him in an "anti-social and discriminatory" manner, greeted him with a "sarcastic smile," closed her office door to avoid him, and excluded him from a clique of coworkers. (Dk. No. 3, at 9-11.) Agbati also asserts that a coworker slammed her door closed when he answered the phone. At most, Agbati's allegations show that he experienced "rude treatment," "callous behavior," and "personality conflict[s]" during his time at VDACS, but those experiences fall short of a plausible hostile work environment claim. *Sunbelt Rentals, Inc.*, 521 F.3d at 315. Because Agabti fails to plead that he experienced severe or pervasive harassment, the Court will dismiss Count Two with prejudice.

### 3. Count Three: Constructive Discharge

In Count Three, Agbati asserts that the alleged discrimination he suffered amounts to constructive discharge, forcing him to resign. To proceed on a constructive discharge theory of discrimination, a plaintiff must plead facts showing "(1) the deliberateness of [the defendant's] actions, motivated by [discriminatory] bias, and (2) the objective intolerability of the working conditions." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014).

Agbati's allegations do not meet the "objective intolerability" standard. Agbati proceeds on the same factual allegations to support his constructive discharge claim as his hostile work environment claim. Because his allegations do not support a hostile work environment claim, his constructive discharge claim also fails. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe [or] pervasive' standard for hostile work environment claims.").[4] Agbati, therefore, cannot proceed on a constructive discharge theory. Accordingly, the Court will dismiss Count Three with prejudice.

### 4. Count Four: Retaliation

In Count Four, Agbati alleges that VDACS retaliated against him after he filed his April, 2018 grievance. To state a retaliation claim, a plaintiff must plead facts showing "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected

---

[4] Indeed, "mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so unpleasant as to compel a reasonable person to resign." *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006). "Even yelling, public chastisements, and forced work under unsafe conditions cannot support [a constructive discharge] claim." *Kenion v. Skanska USA Bldg., Inc.*, No. RDB-18-3344, 2019 WL 4393296, at *11 (D. Md. Sept. 13, 2019). Agbati's allegations of "workplace discomforts and inequitable treatment," *id.*, do not qualify as "objectively intolerable" working conditions to support a constructive discharge claim.

activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012). Adverse employment actions may involve "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). VDACS argues that Agbati fails to plead facts showing that he suffered any adverse employment action.

Agbati asserts that he was "completely outcast[ed]" after he filed his grievance. (Dk. No. 3, at 8.) To qualify as an adverse employment action, "an employer's conduct must be 'so materially adverse as to dissuade a reasonable employee from engaging in protected activity.'" *Michael v. Va. Commonwealth Univ.*, No. 3:18cv125, 2018 WL 3631888, at *3 (E.D. Va. July 31, 2018) (quoting *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 831 (E.D. Va. 2016)). Agbati does not explain how he was "completely outcast[ed]" or what actions led to his feelings of being ostracized. Agbati simply pleads no facts showing that his "treatment at work changed dramatically" after he filed his grievance. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544 (4th Cir. 2003). Moreover, his allegations of hostile behavior by his supervisor and coworker all appear to predate his April, 2018 grievance.

Nonetheless, to give Agbati an opportunity to comply with the pleading standard, the Court will grant Agbati leave to file an amended complaint as to Count Four.[5] Accordingly, the Court will dismiss Count Four without prejudice.[6]

---

[5] Should Agbati continue to rely on his assertion that he was "completely outcast[ed]" after he filed his grievance, his amended complaint must allege facts that more precisely explain what happened and when it happened.

[6] Agbati also appears to argue that his decision to resign qualifies as a retaliatory adverse employment action under a constructive discharge theory. "Constructive discharge may serve as the adverse employment action in a Title VII retaliation claim." *Bailey v. Va. Dep't of Alcoholic*

8

### 5. *Count Five: Pay Discrimination*

In Count Five, Agbati asserts a pay discrimination claim under Title VII. To state a pay discrimination claim under Title VII, a plaintiff must plead facts showing "that (1) [he] is a member of a protected class; (2) [he] was paid less than an employee outside the class; and (3) the higher paid employee was performing a substantially similar job." *Kess v. Mun. Emps. Credit Union of Balt., Inc.*, 319 F.2d 637, 644 (D. Md. 2004). Agbati generally asserts that white employees at VDACS earn more than nonwhite employees.

When a plaintiff "base[s] [his] allegations 'completely upon a comparison to an employee from a non-protected class[,] . . . the validity of [his claim] depends upon whether that comparator is indeed similarly situated.'" *Lawrence v. Global Linguist Sols LLC*, No. 1:13cv1207, 2013 WL 6729266, at *4 (E.D. Va. Dec. 19, 2013) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (per curiam)). A plaintiff must plead facts showing that the comparators "dealt with the same supervisor, [were] subject to the same standards[,] and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

---

*Beverage Control*, No. 2:18cv392, 2019 WL 123903, at *7 (E.D. Va. Jan. 7, 2019). A "retaliatory constructive discharge claim," however, "requires 'something more' than actionable retaliation." *Shetty v. Hampton Univ.*, No. 4:12cv158, 2014 WL 280448, at (E.D. Va. Jan. 24, 2014) (adopting report and recommendation). A plaintiff must plead facts showing "(1) the deliberateness of [the defendant's] actions, motivated by [discriminatory] bias, and (2) the objective intolerability of the working conditions." *Freeman*, 750 F.3d at 425. As the Court has explained, Agbati's allegations do not meet the "objective intolerability" standard. Moreover, any retaliatory constructive discharge claim would fail because Agbati cannot show a causal link between filing his grievance and his resignation one year later. Such "a lengthy time lapse . . . negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Accordingly, Agbati cannot state a "retaliatory constructive discharge" claim based on his resignation.

Agbati does not point to any comparator to support his pay discrimination claim. The exhibits attached to Agbati's complaint appear to show his coworkers' salaries, but wage discrimination claims under Title VII require plaintiffs to plead facts showing that a comparator performed "substantially equal work." *Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019). Indeed, plaintiffs must plead facts showing that comparators outside the protected class "dealt with the same supervisor, [were] subject to the same standards[,] and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Lawrence*, 2013 WL 6729266, at *4. Because Agbati fails to identify a comparator or otherwise plead that a comparator performed substantially equal work, he fails to state a plausible pay discrimination claim.

Nonetheless, to give Agbati an opportunity to comply with the pleading standard, the Court will grant Agbati leave to file an amended complaint as to Count Five.[7] Accordingly, the Court will dismiss Count Five without prejudice.

### B. Count Six: VHRA Claim[8]

In Count Six, Agbati asserts a discrimination claim under the VHRA. The VHRA prohibits employers with more than five but fewer than fifteen employees from discriminating against employees based on protected characteristics. *See* Va. Code § 2.2-3903(B). The VHRA "provides

---

[7] The Court cautions Agbati that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, Agbati must identify a comparator and must plead sufficient facts to render his claim plausible that higher-paid white employees "were actually similarly situated." *Coleman*, 626 F.3d at 191.

[8] VDACS moved to dismiss Agbati's VHRA claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). But the grounds for dismissal concern whether Agbati states a claim under the VHRA. Accordingly, the Court will decide the motion as to Agbati's VHRA claim under Rule 12(b)(6) rather than Rule 12(b)(1). *See Rose-Stanley v. Virginia*, No. 2:15cv7, 2015 WL 6756910, at *3 n.1 (W.D. Va. Nov. 5, 2015).

protection against discrimination that federal laws do not cover." *Michael*, 2018 WL 3631888, at *4.

Agbati does not allege that VDACS employs fewer than fifteen employees. In fact, VDACS employs well over fifteen employees. *See Richardson v. Prince William Cty.*, No. 1:17cv761, 2018 WL 548666, at *3 (E.D. Va. Jan. 24, 2018) (taking judicial notice that the defendant employs more than fifteen employees and dismissing the plaintiff's VHRA claim). Because Agbati does not and cannot plead that VDACS has the requisite number of employees to state a claim under the VHRA, the Court will dismiss Count Six with prejudice.

## IV. **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part the motion to dismiss. The Court will deny the motion as to Agbati's failure to promote claim under Title VII. The Court will grant the motion as to Agbati's remaining claims. The Court, however, will grant Agbati leave to file an amended complaint as to his retaliation and pay discrimination claims.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the pro se plaintiff.

Date: 6 April 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge